# IN THE COURT OF APPEALS OF IOWA

No. 20-1046
Filed November 30, 2020

**IN THE INTEREST OF K.B.,**
**Minor Child,**

**M.B., Mother,**
        Appellant,

**T.B., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


        A mother and father separately appeal the termination of their parental

rights to their child.  **AFFIRMED ON BOTH APPEALS.**


        James W. Thornton of Thornton & Coy, PLLC, Ankeny, for appellant
mother.

        Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

        Jesse A. Macro Jr. of Macro & Kozlowski, L.L.P., West Des Moines,
attorney and guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., Greer, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2020).

**MAHAN, Senior Judge.**

A mother and father separately appeal the termination of their parental rights to their child, K.B., born in 2018. Both challenge the juvenile court's refusal to grant a six-month extension and argue termination was not in the child's best interests. The mother also challenges the court's denial of her motion to continue for an in-person hearing. We affirm on both appeals.

## I.    *Background Facts and Proceedings*

The mother and father each have a history of use of illegal substances since their early teenage years. Their family came to attention of the department of human services due to concerns about the mother's use of methamphetamine and heroin during her pregnancy with K.B. and after the child's birth in September 2018.[1] In November 2018, the mother and child were living with the maternal grandmother, and the mother intended to reenter residential treatment when a spot became available; the father was incarcerated for "drug related reasons." The juvenile court ordered the child to remain in the mother's custody so long as she continued to reside with the maternal grandmother and complied with drug treatment. On January 2, 2019, upon the mother testing positive for methamphetamine, the court entered an ex parte order placing the child with the maternal grandmother and ordering the mother to vacate the home "until there is assurance that she has begun and is active in treatment and recovery." The child was adjudicated in need of assistance and has remained in the grandmother's care since his removal from the mother's care.

---

[1] The department issued founded child abuse reports against the mother stemming from her drug use while caring for the newborn.

At the time of the dispositional hearing in March, the mother was in inpatient treatment and the father was released on probation and in contact with the department to establish visits with the child. At the time of the review hearing in July, the mother had been unsuccessfully discharged from treatment and the father was in outpatient treatment and attending supervised visits with the child. At the time of the permanency hearing in October, the mother had successfully completed inpatient treatment but did "not closely follow[ ] an aftercare plan" and had tested positive for methamphetamine. The father admitted to overdosing on heroin, which was a violation of his probation; he had thereafter entered a treatment facility but was arrested "due to ongoing use" in the facility. The department noted that although the parents were "engaged in services," they had not "demonstrated a pattern of consistent sobriety" or "made the progress necessary in this case to believe that with additional time they would be in a healthy place to safely and adequately care for [the child]." The court directed the State to institute termination proceedings.

The termination hearing took place in June 2020. The record before the juvenile court indicated the child had been removed since January 2019, and any visits with the parents had been fully supervised. The mother was "not actively engaged" in substance-abuse or mental-health treatment, "report[ed] staying at a few different locations," and had little contact with the department. The father had been sober since his arrest on October 17, 2019, and in December 2019, he had been admitted to the Teen Challenge program per the terms of his probation. He was nearing the "reentry phase" of the program, which he described as "kind of a halfway house." His anticipated discharge date into the community is December

19, 2020. The father requested an extension, explaining he was "going to walk out of this place a changed man, a complete 180," and he believed the child could be returned to his care upon his release.

The guardian ad litem and department caseworker recommended termination of parental rights. The guardian ad litem noted the efforts being made by the parents but stated "a child should not wait indefinitely for his parents to remedy their situations, problems, deficiencies, whatever it may be, and that delay is not always or is never a good thing for a young child." The department noted the child was "thriving" in his placement with the maternal grandmother, who was "willing and able to provide [the child] permanency through adoption."

In July 2020, the court entered its order terminating parental rights pursuant to Iowa Code section 232.116(1)(h) (2019). The mother and father separately appeal.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). We review the denial of a motion to continue for an abuse of discretion, which occurs "when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *In re A.H.*, ___ N.W.2d ___, ___, 2020 WL 4201762, at *3 (Iowa Ct. App. 2020) (quoting *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018)).

### III. Discussion

Neither the mother nor the father challenge the sufficiency of the evidence supporting the statutory grounds authorizing termination, so we need not address the first step of the three-step termination framework. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Instead, both challenge the juvenile court's refusal to grant a six-month extension so they could continue working toward reunification with K.B. and argue termination was not in the child's best interests. The mother also contends the court "erred in not continuing the termination hearing . . . so that the parties could appear in person." We address these claims in turn.

#### A. Additional Time

Iowa Code section 232.104(2)(b) allows the district court to continue temporary placement of a child for six months provided the court is able to conclude the need for removal will no longer exist at the end of the six-month period. With regard to the mother, she had been receiving services for nearly two years yet there had not been any resolution to the concerns initially raised. As the juvenile court noted, the mother "did not really dispute" that the child "cannot be returned to [her] custody . . . due to her unresolved mental-health and substance-abuse issues, as well as her lack of overall stability." And aside from those concerns, the mother was inconsistent with visits and failed to engage with caseworkers. Indeed, the juvenile court observed, "at the time of the termination hearing, [the mother] was in a less healthy and positive place than she was when the initial CINA petition was filed."

With regard to the father, the court observed that he "has been in some form of custody—jail, Bridges, Teen Challenge—related to his criminal justice system

involvement and substance-abuse issues, for nearly all of [K.B.]'s life." At the time of the termination hearing, the father was "still at least six months away" from completing his programming in supervised setting. The father testified he had "been through about 15, almost 20 inpatient facilities since [he] turned eighteen," and he was now twenty-four years old. We concur with the court's finding that even despite the father's sobriety and commendable progress during his current placement, "given his lengthy history of substance abuse and treatment episodes, he would have to prove he could maintain his gains in supervised settings when he returned to the community to safely parent a very young child like [K.B.]."

Unfortunately, there is little in the history of this case that would allow us to conclude the child could be placed with either parent within the next six months. Under these circumstances, we conclude additional time was not warranted. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages."); *see also P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

### B. Best Interests

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). The guardian ad litem opined there is "no[ ] doubt both parents love [the child]" but K.B. "should not wait indefinitely for his parents to get their lives in order." The parents are unable to assume custody of the child now or at any time in the foreseeable future. There is no reason to delay the child the permanency

he needs and deserves. For the reasons set forth above, we conclude termination is in the child's best interests, and no permissive statutory exception should be applied to preclude termination.

### C. Motion to Continue

The termination hearing took place on June 2, 2020, during a period of time when in-person proceedings were not permitted in our court system due to the COVID-19 pandemic.[2] Accordingly, it was ordered to be conducted by videoconference. On appeal, the mother contends, "Due process in this matter dictated that the Mother and the State's witnesses be allowed to appear in-person to be able to testify, and to be effectively cross-examined."[3] Therefore, she claims the court erred in not granting the motion to continue and the termination of her parental rights "should be set aside."

The State argues error was not preserved on the mother's due process claim. The termination hearing was originally scheduled for February 28, but it was continued for scheduling reasons. On March 27, the court entered an order rescheduling the hearing for June 2. On May 19, in response to the parents' requests for an in-person hearing, the guardian ad litem filed a "motion to keep current trial date," stating in part that "[a]ny delay is not in the child's best interests" and the "parents do not have a right to confront a witness in a termination matter. The [videoconference] hearing affords the parties a fair hearing and due process is met."

---

[2] COVID-19 is a virus that has created an ongoing international pandemic. *See A.H.*, ___ N.W.2d at ___, 2020 WL 4201762, at *3, n.6.

[3] We observe that neither the mother nor the State called any witnesses, and the mother did not testify.

Following the pretrial conference, at which the parents' attorneys were present, the court entered an order, stating: "Ultimately, all parties are in agreement that the hearing can go forward on June 2 at 9:00 a.m., and are in agreement with the hearing being held via [videoconference hearing]. A separate order will be filed with directions for participating in the hearing."

At the outset of the hearing on June 2, the mother's attorney raised the issue of the mother's "preference to have this be an in-person hearing." The court denied the request, stating: "[B]ased on our discussion at the pretrial conference, the new Supreme Court order,[4] and the length of time this case has been open, the number of times it's been continued, we are going to go forward today." Despite the mother's vague claim at the hearing, we believe the issue of due process was raised before and decided by the court in its order on the guardian ad litem's motion, so error is preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

---

[4] On April 6, the supreme court entered an order containing the following provision:

> Those hearings that are set between April 6, 2020 and June 15, 2020 should either be continued until after June 15, 2020 or should ONLY be conducted by video or phone conferencing. Uncontested hearings should use remote technology. Contested hearings, such as a contested adjudication hearing or termination hearing, may be conducted via remote technology if all parties agree, and thereafter file a written waiver of personal appearance or waive such appearance on the record. If one party objects to proceeding by phone, and the juvenile court believes the matter should nonetheless go forward and not be postponed, then the court can order telephonic testimony.

Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Child Welfare and Juvenile Justice Youth and Families* (Apr. 6, 2020), *available at* https://www.iowacourts.gov/collections/488/files/1079/embedDocument/.

However, we find no abuse of discretion in the court's order. "The relevant provision from our supreme court's order simply leaves it to the juvenile court to decide whether the matter should proceed." *In re B.S.*, No. 20-0929, 2020 WL 5651693, at *2 (Iowa Ct. App. Sept. 23, 2020); *accord In re K.A.*, No. 20-0979, 2020 WL 5946114, at *4 (Iowa Ct. App. Oct. 7, 2020). Here, the court explained its reasons for denying the mother's motion on the record and again in the termination order, which included "the length of time this case has been open." "[W]here, as here, the limitations period has lapsed, we view termination proceedings with a sense of urgency."[5] *B.S.*, 2020 WL 5651693, at *2 (citing *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)). We affirm the court's denial of the motion to continue.

Having addressed the issues raised on the parents' appeals, we affirm the termination of the mother and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**

---

[5] Our finding dispels the mother's attempt to distinguish this case because "since by the hearing date of June 2, 2020, it was known that the supreme court intended to resume in-person hearings in July 2020."